**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4429-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RANDY WILLIAMS,

     Defendant-Appellant.

_____

Submitted October 10, 2018 – Decided October 23, 2018

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 10-09-1289.

Joseph E. Krakora, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In 2011, a jury found defendant and his co-defendant, Lemont Love, guilty of second-degree robbery, N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2; and third-degree aggravated assault, N.J.S.A. 2C:12-1b(1). The trial judge sentenced defendant to an aggregate term of eighteen years of imprisonment with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On his direct appeal, we affirmed defendant's convictions and aggregate sentence but remanded for the trial court to merge the aggravated assault conviction into the armed robbery conviction. State v. Williams, No. A-1321-11 (App. Div. July 31, 2014) (slip op. at 27) (Da1) Our Supreme Court denied certification. State v. Williams, 220 N.J. 269 (2015).

In April 2015, defendant filed a petition for post-conviction relief (PCR). In a comprehensive written opinion, Judge Dennis Nieves denied PCR. Defendant appeals, and we affirm.

I

We briefly summarize the evidence presented at trial. Darin Sloat owed Love a significant amount of money. On the morning of February 17, 2010, Sloat was staying at a motel in East Brunswick with his girlfriend, K.E., and her ten-month-old son, when defendant and two co-defendants entered the room and

attacked Sloat. Love stomped and kicked Sloat, defendant punched Sloat in the head and neck, and co-defendant Charles Opher punched Sloat in the lower back. After the assault, defendant, Love, and Opher ran out of the motel room, taking Sloat's cell phone with them, and fleeing in a silver Pontiac.

The police apprehended the trio in Spotswood after an alert went out for their vehicle. The police recovered Sloat's cell phone from the vehicle, and testing confirmed the presence of blood on Love's sneakers. The police transported defendant, Love, and Opher to the police station, where East Brunswick police also brought Sloat to see if he could identify the persons who assaulted him. As defendant, Love, and Opher stepped out of the police vehicle, one by one, Sloat identified each one as participating in the assault. Sloat then gave a statement to the police. Sloat testified to these events at trial.

A Middlesex County grand jury indicted defendant, Love, and Opher on charges of robbery, burglary, and aggravated assault. Opher resolved his charges through a plea agreement, which called for him to testify against defendant and Love. At trial, Opher testified that he, defendant, and Love each hit or stomped Sloat. K.E. also testified that she saw all three defendants "kicking [Sloat] and punching him in the head and the back."

In his direct appeal, defendant raised the following issues:

A-4429-16T1

POINT I

IT WAS ERROR FOR THE TRIAL COURT TO DENY DEFENDANT'S MOTION FOR MISTRIAL AFTER THE DELIBERATING JURY VIEWED THE DEFENDANT IN HANDCUFFS.

POINT II

THE TRIAL COURT'S RESPONSE TO THE JURY QUESTION REGARDING THE OBJECT OF THE THEFT WAS ERRONEOUS AND DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III

THE COURT'S FAILURE TO GIVE A CLAIM OF RIGHT CHARGE AND ITS INADEQUATE[,] CONFUSING AND CONTRADICTORY INSTRUCTION DEPRIVED DEFENDANT OF A FAIR TRIAL. (NOT RAISED BELOW)

POINT IV

THE DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE STATE ARGUED THAT THE TREAD MARKS ON THE VICTIM'S BACK WERE MADE BY DEFENDANT'S SHOES WITHOUT SUPPORTING TESTIMONY.

POINT V

DENIAL OF DEFENDANT'S MOTION FOR NEW TRIAL WAS ERROR.

POINT VI

IT WAS ERROR FOR THE SENTENCING COURT TO FAIL TO MERGE THE OFFENSES OF SECOND[-]DEGREE ROBBERY AND AGGRAVATED ASSAULT.

In this appeal from the denial of PCR, defendant argues:

POINT I

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ENTIT[]LING HIM TO [PCR] AND AN EVIDENTIARY HEARING[.]

(A)    Counsel was ineffective for failing to sufficiently communicate with defendant so he may assist in his own defense[.]

(B)    Counsel was ineffective for not requesting a Wade[1] hearing on the issue of defendant's identification by the victim[.]

II

PCR is New Jersey's analogue to the federal writ of habeas corpus. State v. Afanador, 151 N.J. 41, 49 (1997); State v. Preciose, 129 N.J. 451, 459 (1992). It is the vehicle through which a defendant may, after conviction and sentencing, challenge a judgment of conviction by raising issues that could not have been raised on direct appeal and, therefore, ensures that a defendant was not unjustly

---

[1]  United States v. Wade, 388 U.S. 218 (1967).

A-4429-16T1

convicted. State v. McQuaid, 147 N.J. 464, 482 (1997). Pursuant to Rule 3:22-2(a), a criminal defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States and the Constitution or laws of the State of New Jersey." A petitioner must establish the denial of such a right by a "preponderance of the credible evidence." Preciose, 129 N.J. at 459 (citations omitted). "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. State v. Mitchell, 126 N.J. 565, 579 (1992).

Claims of constitutionally ineffective assistance of counsel are well-suited for post-conviction review. R. 3:22-4(a)(2); Preciose, 129 N.J. at 460. To establish a prima facie claim of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of success under the test set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), which the New Jersey Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987). Preciose, 129 N.J. at 463.

Under the Strickland-Fritz standard, the first issue is whether counsel's performance was deficient. The second prong of the Strickland-Fritz test is whether there exists "a reasonable probability that, but for counsel's

6

unprofessional errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694. To succeed under this prong, a defendant must do more than make bald assertions that he was denied effective assistance of counsel; he must allege specific facts sufficient to demonstrate counsel's alleged substandard performance. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999); see also State v. Porter, 216 N.J. 343, 354 (2013) (holding that in order to establish a prima facie claim, the petitioner "must allege specific facts and evidence supporting his allegations"). As in a summary judgment motion, the PCR judge must view the facts in the light most favorable to the defendant to determine whether the defendant has established a prima facie claim. Ibid.

Here, defendant asserts the lack of communication between him and his counsel led to his counsel's failure to request a Wade hearing, the subject of his second point on appeal. Defendant further argues he was prejudiced by his counsel's acts because "[t]here were no limits or barriers on counsel's ability to sufficiently communicate with [defendant]. If he had, the results of the proceedings would have been different."

Following our review of defendant's brief and the record, we agree with the PCR judge, who found that defendant "supplies absolutely no evidence that trial counsel was unprepared other than through assertions. There are no

certifications or affidavits based on the personal knowledge of any party, let alone [d]efendant." The judge further noted that "trial counsel successfully suppressed the use of brass knuckles at trial which [defendant] had in his possession at the time of his arrest following the incident." On appeal, defendant wholly fails to "allege specific facts supporting his allegations" that counsel was unprepared or insufficiently communicated with defendant. Porter, 216 N.J. at 354. We conclude that the record supports the judge's findings, and the conclusion that counsel was not ineffective for failing to sufficiently communicate with defendant.

Defendant next argues his counsel was ineffective for not requesting a Wade hearing on the issue of Sloat's identification of defendant, when defendant exited the police vehicle in handcuffs. Defendant argues he suffered prejudice because a Wade hearing would have prevented his indictment, or alternatively his conviction.

A trial court may hold a hearing pursuant to N.J.R.E. 104(a) to determine whether a pretrial identification of a criminal defendant was properly conducted and therefore admissible under N.J.R.E. 803(a)(3). A hearing to determine the admissibility of a pretrial identification of a criminal defendant should be held when an identification is at issue. Wade, 388 U.S. at 242. The identification's

reliability and ultimate admissibility must be strictly tested through a pretrial hearing. See State v. Michaels, 136 N.J. 299, 319 (1994) (citations omitted).

The right to a Wade hearing is not absolute and is not granted in every case involving an out-of-court identification. State v. Ruffin, 371 N.J. Super. 371, 391 (App. Div. 2004) (citations omitted). The threshold issue is whether the identification procedure was impermissibly suggestive. State v. Herrera, 187 N.J. 493, 503 (2006). "A Wade hearing will be held when a defendant presents 'some evidence of impermissible suggestiveness' in the identification process." State v. Cherry, 289 N.J. Super. 503, 517 (App. Div. 1995) (quoting State v. Rodriquez, 264 N.J. Super. 261, 269 (App. Div. 1993)). Impermissible suggestibility is described as follows:

> [T]he determination [of impermissive suggestibility] can only be reached so as to require the exclusion of the evidence where all the circumstances lead forcefully to the conclusion that the identification was not actually that of the eyewitness, but was imposed upon him so that a substantial likelihood of irreparable misidentification can be said to exist.
>
> [State v. Madison, 109 N.J. 223, 234 (1998) (emphasis omitted) (quoting State v. Farrow, 61 N.J. 434, 451 (1972)).]

Defendant argues that Sloat's identification of defendants was "the only identification presented to the grand jury . . . . If [Sloat]'s identification w[as]

successfully deemed unreliable[] and suppressed, then the grand jury would have had no basis by which to indict the defendant."  However, defendant's assumption that his trial counsel could have requested a Wade hearing or filed a suppression motion at the pre-indictment stage, regarding Sloat's identification, lacks support in the law.  Evidence arising from impermissibly suggestive identifications are subject to exclusion from trial proceedings, but "the exclusionary rule and the 'fruit of the poisonous tree' doctrine are not applicable to exclude the presentation of evidence to a grand jury, and a grand jury may return an indictment based on evidence which would be excluded at trial under that rule or that doctrine."  31 N.J. Practice, Criminal Practice and Procedure § 10.35, at 504 (Leonard N. Arnold) (2018) (citation omitted).  Defendant's argument that his trial counsel could have excluded Sloat's identification from the grand jury proceedings clearly lacks substantive merit.

Alternatively, defendant argues that because his trial counsel provided ineffective assistance by failing to interview Sloat regarding his identification of defendant, and then failing to request a Wade hearing at the commencement of trial.  Defendant argues Sloat's identification was impermissibly suggestive because it occurred when "defendant was already in custody [and] in handcuffs,"

and Sloat "told the jury he could recognize Love 'but the other ones I do [not] know.'"

First, defendant's assertion regarding Sloat's testimony was taken out of context, as Sloat was able to identify all three defendants, but he personally knew only Love. The relevant testimony occurred during the following colloquy:

Q     What did the officer ask you? . . . .

A     If I can identify him, if that was the perps.

Q     Okay. And what did you say? Were you able to
        see these people?

A     Yes.

Q     You knew Love ahead of time . . . right?

A     Yes.

Q      Was he brought out?

A     Yes.

Q     Okay. Were any other individuals brought out?

A     [T]wo other individuals. . . . [O]ne with gray,
        silver, platinum, whatever. And another one with
        a hoodie on.

Q     Okay. When you say gray, silver, are you talking
        about the chain you told us about before?

A    Chain, yes.

Q    So . . . were you able to identify these individuals?

A    Lemont Love.  The other ones I do [not] know.

Q    Were you able to identify them that day? . . . . Were they the people who did this to you?

A    Yes.  Yeah.

Q    Well –

A    I saw them walk in.  So I knew what they were wearing.

Q    Were they wearing the exact same thing?

A    They were all black.

Q    Were they wearing the same things that they were wearing when they came into your hotel room?

A    Yes.

Further, the detective with Sloat at the time of the identification testified that defendants "exited the vehicle one at a time [,a]nd Mr. Sloat identified . . . all three as being the gentlemen who had assaulted him."  After being asked if Sloat "seem[ed] positive," the detective stated, "Absolutely.  Yes."

12

Second, defendant provides no convincing support or reasoning for his argument that Sloat's identification was unduly suggestive as a result of defendant, Love, and Opher being in custody and in handcuffs. This court has

> found that [a] witness' identification of [a] defendant seated and handcuffed in the back of [a] police car was suggestive[,] but that 'such suggestive circumstances did not render the identification procedure per se improper and unconstitutional.' The panel concluded that the detailed description by the two witnesses of the defendant and the vehicle involved was corroborated by the motel security videotape, and, therefore, the reliability of the witnesses' identifications was strong.
>
> [State v. Herrera, 187 N.J. 493, 505 (2006) (quoting State v. Wilson, 362 N.J. Super. 319, 327 (App. Div. 2003)).]

Here, Sloat identified the individuals who attacked him within approximately one hour of the attack. Sloat knew co-defendant Love personally, and then recognized the other defendants, who were wearing the same clothes they wore at the time of the attack. Similar to Wilson, it was known defendants were driving a silver Pontiac, leading to the alert that went out after the attack and the discovery of the vehicle and defendant and his co-defendants in Spotswood. Finally, the police found Sloat's cell phone in the silver Pontiac. We therefore conclude Sloat's identification was reliable, albeit suggestive.

A-4429-16T1

Significantly, defendant proffers only a conclusory argument as to how he suffered prejudice from the lack of a <u>Wade</u> hearing, as he merely states that "defendant would have been successful at trial" and "an appropriate [m]otion to [d]ismiss would have been granted," had a <u>Wade</u> hearing been conducted. On this point, the PCR court judge discussed at length why a <u>Wade</u> hearing would have been "fruitless," based on the plethora of other evidence admitted into trial that implicated defendant. The judge stated, in relevant part:

> [Defendant] was identified as one of the three individuals that attacked Mr. Sloat in the motel room. [Co-defendant] Opher . . . testified that [defendant] joined in on hitting Mr. Sloat and that he had seen [defendant] hitting Mr. Sloat. In addition, another witness, [K.E.], testified at trial that all three of the co-defendants were on top of Mr. Sloat- kicking and punching him in the head and back. . . .
>
> Moreover, physical evidence was presented at trial linking Mr. Williams to the crime charged. Specifically, Mr. Sloat's shirt had three different shoe tread marks on it – a result of being kicked multiple times during the attack at the motel. . . . All three of the defendants' shoes were taken in as evidence. Photographs of Mr. Sloat's shirt with the three different shoe tread marks were presented to the jury along with the shoes seized from the three co-defendants. The jury found that the three pairs of shoes matched the three different shoe print marks on Mr. Sloat's shirt, one pair of which belonged to [defendant].

Defendant's argument that had a <u>Wade</u> hearing been conducted he would have been successful at trial is merely a "bald assertion[]" that he was prejudiced. <u>Cummings</u>, 321 N.J. Super. at 170. Therefore, defendant's second point on appeal also lacks merit.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4429-16T1